## Case No. 10,930.

PENN v. BUTLER.   PENN v. PENN.   BUTLER v. PENN (two cases).

[4 Dall. 354.] [1]

Circuit Court, D. Pennsylvania. May Term, 1801.

BONDS TO JOINT OBLIGEES — RIGHT OF SURVIVOR TO POSSESSION—EQUITY JURISDICTION.

[1. Where an attorney in fact of two persons who were tenants in common of certain lands sold various tracts thereof and took bonds for the purchase price, running to his principals jointly, *held*, that upon the death of one of them, the survivor was entitled, as against his executors, to have possession of all the bonds, and, in the absence of any allegations of fraud or insolvency or breach of trust, there was no ground for the interposition of a court of equity for the purpose of apportioning the bonds, or to appoint a receiver to collect them.]

[Cited in Wall v. Bissell, 125 U. S. 391, 8 Sup. Ct. 979.]

These were bills in equity, involving a great variety of facts, respecting the disposition of the estates of the late proprietary family: but the principal object of all of them, was submitted for the opinion of the court, on the following agreement: "It is agreed, that these suits be submitted for the opinion of the court, upon the following statement of facts, admitted by all the parties, except the fact, that Anthony Butler, for his own accommodation, and without the consent, knowledge, or approbation, of John Penn the elder, took, inter alia, in part payment of certain sales

[1] [Reported by A. J. Dallas, Esq.]

herein after mentioned, certain bonds and mortgages, in the joint names of John Penn the elder, and John Penn the younger, after obligees and mortgagees; which fact, it is agreed, shall be decided by the court, on evidence to be produced; and that such formal decrees be eventually drawn and entered in each, as will effectuate the opinion which the court shall pronounce. Case. John Penn the elder, and John Penn the younger, after the act of assembly of Pennsylvania, passed November 27th, 1779, entitled 'An act for vesting the estates of the late proprietaries of Pennsylvania in this commonwealth,' remained seised and possessed, as tenants in common, of all their manors, reserved tracts, &c., in Pennsylvania, with power to sell in fee: three-fourth parts being the property of John Penn the younger; and one-fourth part being the property of John Penn the elder. On the 19th of November, 1787, John Penn the elder appointed John F. Mifflin his attorney, with power to sell and convey, &c.. to receive payment for lands sold either in money or securities; and to substitute any agent or agents. And on the 23d of December, 1787, John F. Mifflin substituted Anthony Butler. On the 29th day of June in the year 1787, John Penn the younger appointed Robert Millegan and John F. Mifflin his attornies, with power to sell, and convey, &c., to receive payment for lands sold, either in money or securities; and to substitute any agent or agents. And on the 29th day of June in the year 1787, Robert Millegan and John F. Mifflin substituted Anthony Butler. John Penn the younger afterwards revoked the power of attorney, which he had granted to Robert Millegan and John F. Mifflin. And on the 29th of April, 1788, John Penn the younger appointed the said Anthony Butler his attorney, with powers to sell and convey, and to receive in payment money or securities. By virtue of the several powers above stated, Anthony Butler did, at sundry times, sell several tracts of land, belonging to the said John Penn the elder, and John Penn the younger, as tenants in common, in the proportions aforesaid; and in payment therefor (inter alia) took, for his own accommodation, without the consent, knowledge, or approbation, of the said John Penn the elder, certain bonds and mortgages, in the joint names of John Penn the younger, and John Penn the elder, as obligees and mortgagees. After the time of taking the said bonds and mortgages, to wit, on the 9th of February, 1795, John Penn the elder died, leaving Anne Penn and John F. Mifflin executrix and executor of his last will and testament. There are in the hands of Anthony Butler, a number of bonds and mortgages, taken as aforesaid, in each and all of which bonds and mortgages, the said John Penn the younger is interested three undivided fourth parts; and the aforesaid executors of John Penn the elder are interested the other one undivided fourth part. Questions. 1st. Whether John Penn the younger, as surviving obli-

gee and mortgagee, is entitled to have and receive from Anthony Butler, all the said bonds and mortgages, for the purpose of collecting and distributing the money thereby secured and made payable, according to the respective interests of the parties? 2d. Or, whether the executors of John Penn the elder, are entitled to receive one-fourth part in value of the said specific bonds and mortgages, for their separate use and benefit? 3d. Or, whether the court will consider the bonds and mortgages, under the circumstances of the case, as several, as well as joint, to be followed with the consequences inferable from such principle?"

On the hearing, Mr. Butler's testimony stated, "that he was, at first, the separate agent of John Penn the younger, when Mr. T. Francis was the separate agent of John Penn the elder; that during this period the bonds, for purchase money of lands sold, were separately taken, according to the interests of the parties; that in September, 1787, he became the agent of both the Penns, but continued, for some time, to take separate bonds; that the purchasers complained of the expense of giving separate bonds and mortgages, and he then determined to take them for the joint use of his principals; that he received no instructions upon the subject, from either party; and that he was not, in fact, aware of any difference between taking the bonds jointly or severally." It, also, appeared, that Mr. J. R. Coates had been appointed the agent of John Penn the younger; and the general question was, whether Mr. Butler should be directed to deliver up the joint bonds and mortgages to him, as the agent of the surviving obligee?

Ingersoll & Mifflin contended, against the claim of the surviving obligee: 1st. That it was founded merely on the mistake, and misapprehension, of the agent, acting for two parties, having distinct interests, and giving separate powers. 2d. That, under such circumstances, a court of equity can, and ought to, apportion the securities, by a fair division of them; so that each party may possess the entire interest and remedy in his proportion. 3d. That even if an apportionment could not be made, the court will appoint a receiver, to collect and divide the joint fund, in the regular proportions. On these points, the following books were cited: 3 P. Wms. 158; 21 Vin. Abr. 509, pl. 4; Carth. 16; 1 Eq. Cas. Abr. 293; 3 Ves. 628, 631, 399; 2 Com. Dig. 255, 258; 1 Eq. Cas. Abr. 290 A.

Rawle & Dallas, in support of the claim of the surviving obligee, urged: 1st. That the point of law is clearly in favour of the claim; and to set aside a plain rule of law, there must be strong, controlling, principles of equity, in favour of the opposite party. 2d. That the act of taking joint securities was not a mistake, or error; but a deliberate act for the accommodation of purchasers. 3d. That there was no suggestion of a fraud, a breach of trust, wilful laches, or probable in-

solvency, in reference to the surviving obligee. 4th. That there is, therefore, no foundation for the interposition of the court to appoint a receiver; nor to justify a court of equity in compelling the parties to accede to an arbitrary apportionment of the securities. On these points were cited, Yel. 177; Vent. 34; 3 Dyer, 350; Shep. Touch. 363, 356; 2 Brownl. & G. 207; 1 Eq. Cas. Abr. 290; 2 Pow. 263; Amb. 311; Cooper v. Coates, 1 Dall. 248; Wallace v. Fitzsimmons, 2 Com. Dig. 110, 209, 213, 255; 2 Vern. 556.

THE COURT were decidedly of opinion, that, at law, the surviving obligee was entitled to the possession of the joint securities, that he might recover the amount; and that there was no ground laid, on the present occasion, for the interposition of a court of equity.

NOTE. On this clear intimation of the opinion of the court, Mr. Coates liberally declared, that if the executors of John Penn, the elder, would concur in giving him immediate possession of the securities, he would not charge a commission, for collecting and paying their proportion of the amount; and the proposition was, accordingly, agreed to.